## Illinois Central Railroad Company v. Rogers & Thomas.

(Decided February 4, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, No. 3).

Carriers—Carriers of Live Stock—Loading and Unloading.—Where the shipper himself attends to the loading of a car of live stock, and does so improperly and loss or injury results from such improper loading, the carrier is not held liable as an insurer although an inspection would have disclosed such improper loading.

TRABUE, DOOLAN & COX, S. LYMAN BARBER and R. V. FLETCHER for appellant.

THOMAS C. MAPOTHER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

On February 4, 1914, in the Jefferson Circuit Court, Rogers & Thomas obtained a verdict and judgment against the Illinois Central Railroad Company in the sum of $219.10 for damages to a shipment of livestock which was delivered by them to and accepted by the railroad company at Leitchfield on April 29, 1913, for transportation to Louisville.

It was shown in evidence by the plaintiffs that they loaded a mixed car of live stock at Leitchfield in three separate compartments; in one end of the car, some calves and sheep; in the other end, eight head of cattle; and in the middle, and separated by partitions at either end, a lot of hogs. It was further shown that on arrival of the car at Louisville two hogs were dead, one cow crippled and three or four others somewhat injured.

The duty of doing the loading was assumed by the shippers; they loaded the car themselves without assistance of any of the carrier's agents; and the agent at Leitchfield did not examine the car after it was loaded.

It was shown by the crew of the train which handled the car that at Kraft's, a station some twenty-five miles from Leitchfield, they discovered that there was something wrong in the car, and made an investigation, which disclosed that one hog was dead and another badly injured; one cow was down and three or four others injured; that about fifteen hogs were in the same compartment with the cattle; that they must have been loaded that way, as the partition between the cattle and the remainder of the hogs was intact. The trainmen knocked this partition out, thus allowing all the hogs to be in the same compartment with the cattle.

1. The court instructed the jury that it was the duty of the railroad agent at Leitchfield to see that the live stock was properly loaded before receiving it for shipment; and that if they believed from the evidence that the railroad company accepted the shipment not properly loaded, but in good condition, and that the live stock was injured or damaged or depreciated in value on delivery at destination, they should find for the plaintiff, unless they should further believe from the evidence that such injury or depreciation was caused by the inherent nature or propensities of the animals, or was due to causes beyond defendant's control, in either of which latter events, they should find for defendant.

Appellant complains of this instruction for the reason that its effect is to impose liability upon the carrier for loss or injury due to improper loading of the car by the shipper.

Appellees insist that the instruction is proper, and cite in support of their contention the case of L. H. & St. L. v. S. S. H. & C. Co., 157 Ky., 772. In that case, the court in illustrating what was meant by the rule that a carrier is not liable as an insurer for loss or injury caused by the act or fault of the shipper, said:

"For instance, under the fourth exception, if goods are insufficiently packed and this fact is not known to the carrier or discoverable by the exercise of ordinary care, it is not liable for loss or injury due to such insufficient packing, if itself free from negligence."

But, in stating the illustration quoted, the court had in mind only those instances where the goods are delivered in crates or packages to the carrier at its warehouse, there to be loaded into cars by the carrier, and not by the shipper. In such cases the weight of author-

ity is that if the improper condition is not known to the carrier or discoverable by the exercise of ordinary care, it is not liable for loss or injury due to such insufficient packing, if itself free from negligence.   6 Cyc., 380; 4 R. C. L. Carriers, Sec. 203; 18 Ann. Cas., 234, note; 29 L. R. A. (N. S.), 1214, note.   But where the improper condition of the goods is known to the carrier or discoverable in the exercise of reasonable care in the ordinary handling and loading of the goods, and they are accepted by the carrier without qualification or dissent in respect of such condition, the carrier must handle the shipment with reference to such defective condition, and is liable for loss or injury thereto if negligent in respect thereof.   The David & Caroline, 5 Blatch (U. S.), 266; Union Express Co., 26 Ohio St., 595.

It is well settled by the almost unanimous authorities that where the carrier furnishes a car to the shipper for the purpose of shipping live stock therein, and the latter loads the live stock himself, and in doing so he overcrowds the animals or places in one compartment animals of different kinds, the risk of loss or injury is upon the shipper, being caused by his own act, or by his own act in conjunction with the inherent nature, propensities and qualities of the animals themselves, the carrier not being liable for loss or injury due to either or both of such causes.   Hutchinson on Carriers, Sec. 333; Fordyce v. Flynn, 56 Ark., 424, 19 S. W., 961; Ficklin v. Wabash R. Co., 115 Mo. App., 633, 92 S. W., 347 (overcrowded sheep); F. W. & D. C. R. Co. v. Word, 32 S. W., 14; Squire v. N. Y. C. R. Co., 98 Mass., 239, 93 A. D., 162 (hogs); Texas R. Co. v. Klepper, 24 S. W., 567 (overcrowded horses); Miltimore v. C. & N. W., 37 Wis., 190 (wagon not securely loaded on car); Ross v. Troy R. Co., 49 Vt., 364, 24 A. R., 144 (machinery insecurely loaded on car); Penna. R. Co. v. Kenwood Bridge Co., 170 Ill., 645, 49 N. E., 215 (bridge material loaded by shipper); O. & M. R. Co. v. Dunbar, 20 Ill., 623, 71 A. D., 291; Rixford v. Smith, 52 N. H., 355, 13 A. R., 42; Miss. Ry. Co. v. Belcher, 41 S. W., 706; Texas R. Co. v. Edins, 83 S. W., 253; see 6 Cyc., 381; 4 R. C. L., Sec. 203, Carriers.

There are a few respectable authorities holding the contrary view.   In Kinnick Bros. v. C. R. I. & P. R. Co., 69 Iowa, 665, 29 N. W., 772, a shipper loaded a car of hogs, and they were injured because of being over-

crowded in the car. The carrier's agent, however, had closed the door of the car, and the court held that as there was nothing to prevent his observing the manner in which the hogs were loaded, the carrier was not relieved from the consequences of the shipper's act or fault in overcrowding the animals in the car.

In Duncan v. Great Northern R. Co., 17 N. D., 610, 118 N. W., 826, 19 L. R. A. (N. S.), 952, a car was loaded by a shipper with flax. The shipper closed the inside doors, and the carrier's agent closed the outside doors. While the car was en route some of the flax escaped by reason of the inside door becoming unfastened. The court said that the devices for fastening the inside doors were open to the inspection of the carrier's agent when he closed the outside doors, and were where he could not avoid seeing them if he looked at all, or even made the slightest effort to ascertain whether they were properly fastened; and upon that ground held the carrier not relieved by the act of the shipper in neglecting to fasten securely the inside doors of the car.

The Duncan case rests upon the Kinnick case, *supra,* and the case of McCarty v. L. & N., 102 Ala., 193, 14 So., 370, 48 A. S. R., 29.

In the McCarty case the court held that if the improper loading of the cars was apparent, that is, was a fact which addressed itself to the ordinary observation of the carrier's servants, the carrier is not relieved upon the ground that the loss or injury was due to the act or fault of the shipper.

The Duncan case also cites Union Exp. Co. v. Graham, 26 Ohio St., 595; but a fair interpretation of the opinion therein is that if the carrier receives for shipment property insufficiently packed when he might, in the exercise of reasonable care, have discovered such insufficiency, the carrier is still liable for loss or injury thereto due to his negligence.

In Gulf W. T. & P. R. Co. v. Wittnebert, 101 Tex., 368, 108 S. W., 150, 130 A. S. R., 858, 16 Ann. Cas., 1153, 14 L. R. A. (N. S.), 1227, the court said that it had found no dissent from the rule that when a consignor loads freight upon a car, the carrier which receives the car as loaded is not liable for damages which arise from a defect in the loading, but, after reviewing a number of cases, the court said:

''The authorities cited and from which we have made the quotations above establish the proposition that it is not the duty of a railroad company which receives from the owner or from another railroad a loaded car to make an inspection of the manner of the loading when the defect cannot be discovered by an external examination.''

However, as has been seen from the authorities cited, the great weight of authority supports the proposition that where the shipper loads the car himself, the carrier is not liable for loss or injury arising from such defective manner of loading, whether the same be discoverable or not, if not actually discovered by the carrier. The carrier has a right to assume that the shipper has loaded the car in proper manner; and it does not lie in the mouth of a shipper whose act or fault in respect to the manner in which he loaded the car has resulted in loss or injury to his property, to say to the carrier that it might have discovered such improper loading by an inspection. The shipper may not thus derive advantage from his own wrong.

For the error in the instruction noted, the appellant is entitled to a new trial, and the judgment of the lower court is, therefore, reversed.