[Civ. No. 4311.  First Appellate District, Division Two.—January. 24, 1923.]

## EDWARD H. MITCHELL, Respondent, v. NORTH PACIFIC STEAMSHIP COMPANY (a Corporation), Appellant.

[1] COMMON CARRIERS—NEGLIGENCE—PROPER PACKING OF POST-CARDS —PAROL EVIDENCE.—In this action against a steamship company for damage to post-cards caused by the alleged careless and improper loading and stowing thereof on defendant's steamer, the bill of lading issued by defendant having been silent on the question of what constituted proper packing, the trial court properly admitted evidence of conversations between plaintiff and defendant's agent, occurring prior to the delivery of the goods to defendant or issuance of bill of lading, relating to the manner of packing the cards for shipment.

[2] ID.—PACKING ACCORDING TO INSTRUCTIONS—ESTOPPEL—EVIDENCE. In such action, it having been shown that the goods were packed in accordance with the directions of defendant's agent, that operated as an estoppel and precluded defendant from introducing evidence for the purpose of showing that, nevertheless, such method of packing was improper.

[3] ID.—ANTICIPATION OF DAMAGE — WAIVER — IMPROPER PACKING — NEGLIGENCE—LIABILITY.—A carrier cannot by an agreement made in anticipation thereof exempt itself from liability for damage occasioned by the gross negligence, fraud, or willful wrong of itself or its servants. If goods are improperly packed and this fact is not apparent or known to the carrier, it is not liable for loss or injury due to such improper packing, if it is itself free from negligence; and, conversely, if the carrier is guilty of negligence, but for which the damage would not have occurred, the carrier is liable even though the improper packing is not apparent.

[4] ID. — ACCEPTANCE OF GOODS IMPROPERLY PACKED — NEGLIGENT HANDLING.—If the goods presented for carriage are not properly packed, and that fact is apparent to the carrier or his servants upon ordinary observation, the carrier may refuse to receive them in that condition, but if it does accept them it must handle the shipment with reference to such defective condition and is liable for loss or injury thereto if negligent in respect thereof.

---

3.  Liability of carrier in respect of property which it accepts improperly packed or crated, notes, 18 Ann. Cas. 234; 19 L. R. A. (N. S.) 952; 29 L. R. A. (N. S.) 1214; L. R. A. 1915C, 1220; L. R. A. 1915D, 1077.

APPEAL from a judgment from the Superior Court of the City and County of San Francisco. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Glensor and Glensor, Clewe & Van Dine for Appellant.

J. R. Pringle for Respondent.

NOURSE, J.—Defendant appeals from the judgment in the sum of $1,437.65 recovered by plaintiff against defendant in an action for damages to postal cards. Plaintiff is a publisher and dealer in postal cards. Defendant is a common carrier of goods and merchandise by water, owning and operating certain steamboats as such between the ports of San Francisco and San Pedro, Los Angeles County. On or about March 25, 1916, plaintiff delivered to defendant at San Pedro 3,907,850 postal cards for transportation to San Francisco, where they arrived in a damaged condition. The cards were packed for shipment in new double cardboard boxes. About twenty per cent of these were inclosed in wooden cases. The balance were tied together with small rope, five boxes in a bundle. In all there were sixty wooden cases and 715 bundles. It was to the cards in the bundles that the damage occurred. Upon arrival of the shipment in San Francisco there was a large stack, between two and three feet high in the center, and about six or eight feet in diameter, consisting of loose cards, torn and dirty, with occasional packages of 100 as they had originally been packed, together with pieces of boxes and a large amount of dirt. Around the outer edge of this stack were the bundles of packages which still remained tied together in the manner originally prepared. The court found that the damage was occasioned by defendant carelessly and improperly conducting the loading and stowing of the post-cards on the steamer. Supporting this finding there was evidence that the bundles were hoisted aboard the vessel upside down with a rope sling; that this sling broke the boxes on the outside edge of the sling and crushed them in such a manner that the top of the boxes would not cover the entire lower part,

thus permitting the cards to fall out of the boxes and through the mesh of the sling upon the wharf; that the witness watched eight or ten slingloads go aboard and that the same thing happened in each instance; that an employee of the company picked the cards up which fell on the wharf and put them in a grain sack; that the Steamship Company had a specially prepared sling which, if used, would not have crushed the boxes. The bill of lading contained certain provisions purporting to release the carrier from liability if goods were improperly packed, to wit: "Carrier shall not be or be held liable for leakage or wastage of contents of any package nor for breakage of or damage to contents of any package unless shipper first show that such package was of proper strength and in good condition and that such contents were properly packed therein and in good order when delivered to carrier and that the package was, while in possession of carrier, so crushed or broken as to cause such loss or damage; and in no event be liable for loss of or damage to any such contents not specified herein, nor for loss from package or damage to property shipped in tierces, crates, sacks, bundles, bales . . . unless it be first proven by shipper that such loss or damage was caused by or resulted from carrier's neglect or fault or failure in proper loading, stowage, custody, care or proper delivery of said packages. . . . All property packed in second-hand or weak cases, etc., shall at all times be at owner's risk; and neither fault nor failure nor improper loading nor bad stowage nor improper custody nor want of due care nor improper delivery of or by carrier shall be presumed, but same must if alleged be proven by shipper. . . . Carrier shall never be liable for any loss of or damage to said packages nor for any damage or loss suffered in connection therewith unless its negligence or willful default be shown to have been the sole cause of the same." Other than this, there were no specifications as to what constituted proper packing. The defense was that the goods were improperly packed and that defendant was released from liability under the terms of the bill of lading. It bears a notation that the bundles and cases were poorly tied and contents part loose. The court found, in accordance with the allegations of the complaint, that said post-cards were packed as directed by defendant and were in good order and condition and well packed when received by defendant, except

that a small number of said post-cards upon delivery to defendant were not securely packed but all said post-cards not so securely packed upon delivery to defendant were by defendant, at plaintiff's cost and expense, well and securely packed and were so packed before the loading thereof upon said steamer.

[1] The trial court admitted evidence of conversations between plaintiff and defendant's agent, occurring prior to delivery of the goods to defendant or issuance of bill of lading, relating to the manner of packing these cards for shipment. This evidence shows that prior to shipment plaintiff consulted with defendant's agent in Los Angeles as to the method of packing, and that the cards were packed in bundles, and not inclosed in wooden cases, as above indicated, at the latter's suggestion and upon his assurance that the company could take them that way; also that he agreed not to use a rope sling, which, however, defendant did use, but promised to use a board sling, which he stated would not loosen the packages. As to this plaintiff testified: "He [defendant's agent] said: 'We don't use that [the rope sling] for packages that I have advised you to make. . . . We have another kind of sling with heavy boards on the bottom and ropes on the sides, . . . the transport would be the one to load these packages on that, that would drop them inside without loosening them,' and I said, 'Are you absolutely sure you can take these that way?' and he said, 'Yes,' and I said, 'Very well, if you can do that.'"

Appellant urges: That the admission of this evidence constituted reversible error, on the ground that it was an attempt to vary the terms of a written instrument by parol evidence. That "the written contract provides that the carrier shall not be held liable for leakages, wastage or damage, unless shipper first show that such package was of proper strength and in good condition; that the evidence does not show that the packages were of proper strength, and that it was error for the court to reject defendant's offer to prove that the packages were not of proper strength or in good condition." That the evidence does not sustain certain findings; in particular, that there is no evidence whatever to show to what extent the goods were damaged while in the possession of this carrier.

The evidence objected to was properly admitted. The bill of lading was silent on the question of what constituted proper packing, and under the well-established rule in such cases, parol evidence to this point was admissible. [2] It was then competent to show that the goods were packed in accordance with the directions of appellant's agent. This operated as an estoppel and precluded appellant from introducing evidence for the purpose of showing that, nevertheless, such method of packing was improper. There is no merit in appellant's argument that it told respondent it would accept the goods packed in the manner detailed because by the terms of the bill of lading the goods were to be at shipper's and not at carrier's risk if not properly packed, and that such statements were not made for the purpose of indicating to respondent a proper method of packing them.

[3] A carrier in this state cannot by any agreement made in anticipation thereof exempt itself from liability for damage occasioned by the gross negligence, fraud, or willful wrong of itself or its servants. (Civ. Code, sec. 2175.) If goods are improperly packed and this fact is not apparent or known to the carrier, it is not liable for loss or injury due to such improper packing, if it is itself free from negligence. Conversely, if the carrier is guilty of negligence but for which the damage would not have occurred, the carrier is liable even though the improper packing is not apparent. [4] If the goods presented for carriage are not properly packed, and that fact is apparent to the carrier or his servants upon ordinary observation, the carrier may refuse to receive them in that condition, but if it does accept them it must handle the shipment with reference to such defective condition and is liable for loss or injury thereto if negligent in respect thereof. (*Northwestern Marble & Tile Co.* v. *Williams,* 128 Minn. 514 [L. R. A. 1915D, 1077, 1079, 151 N. W. 419, 420]; *Illinois Cent. R. R. Co.* v. *Rogers & Thomas,* 162 Ky. 535 [Ann. Cas. 1916E, 120, L. R. A. 1915C, 1220, 1225, and cases cited, 172 S. W. 948, 949]; *Duncan* v. *Great Northern Ry. Co.,* 17 N. D. 610 [19 L. R. A. (N. S.) 952, 959, 118 N. W. 826, 828]; *Union Express Co.* v. *Graham,* 26 Ohio St. 595, 598; *Atlantic Coast Line R. R. Co.* v. *Rice,* 169 Ala. 265 [Ann. Cas. 1912B, 389, 29 L. R. A. (N. S.) 1214, 1217, 1218, 52 South. 918, 920].)

Here appellant's negligence in loading the goods and the resulting damage were affirmatively shown. In addition, it was shown that the goods were packed as directed by appellant. The finding of the trial court as to this fact was amply supported by the evidence. The goods were carried in motor-trucks from respondent's place of business in Los Angeles to San Pedro and delivered to appellant at the steamer by the Pioneer Truck Co. It is urged by appellant that the evidence shows the cards were delivered to the truck company, an independent carrier acting as agent for the shipper, in good condition, but that it shows they were not delivered by it to appellant in good condition; that there was no evidence as to the extent of the damage to the shipment before its delivery to appellant; and that, therefore, the finding as to the extent of the damage done by appellant is not supported by any evidence. But there was no evidence that the cards were damaged when delivered to appellant. The evidence relied upon by appellant is the notation on the bill of lading: "Bundles and cases poorly tied and contents part loose." Also the testimony of a witness that he saw part of the consignment on the wharf at San Pedro near the steamer the next day; that there were some loose boxes lying around the dock which were not tied with rope or string at all; and that there were some cards lying on the dock loose around the boxes. But this same witness further testified that, so far as he could observe, with a few exceptions, the cardboard boxes which he saw on the wharf were in the same condition as when placed on the trucks in Los Angeles; that they "were all tied the same as when they left Van Ornum's [where the trucks were loaded in Los Angeles] with the exception of one or two bundles which were lying loose. . . . There were some cards lying on the docks loose around the boxes. The cardboard boxes containing the post-cards were not injured so far as I could see. I don't know how the post-cards came to get out of the cardboard boxes on to the wharf. There were not more than a hundred or so lying loose. None of the covers were misplaced on any of the cardboard boxes. There were several cardboard boxes on the wharf which were not bound about with a cord or a rope." The court found, as heretofore stated, "that a small number of said post-cards upon delivery to defendant were not securely packed but all said post-cards not so securely

packed upon delivery as aforesaid to defendant were by defendant, at plaintiff's cost and expense, well and securely packed and were so packed before loading thereof upon said steamer." The evidence is sufficient to support the finding of the trial court upon the issue as to the extent of the damage by appellant. As to the condition in which they were packed, the rule above stated applies here. If the goods were obviously poorly packed when delivered to it, appellant might have refused to accept them, but having undertaken to carry them, it was not excused from liability for damage due to its negligence.

For the reasons stated the judgment is affirmed.

Langdon, P. J., and Sturtevant, J., concurred.